**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| UNIVERSITY FOOD CENTER, INC., individually and as the representative of a class of similarly-situated persons and entities,<br><br>Plaintiff,<br><br>v.<br><br>EXPANSE FINANCIAL TECHNOLOGIES, INC., FORMERLY KNOWN AS PREPAID VENTURES, LTD., and JOHN DOES 1-5,<br><br>Defendants. | ) | No.<br><br>**CLASS ACTION** |

## CLASS ACTION COMPLAINT

Plaintiff, University Food Center, Inc. ("Plaintiff"), through undersigned counsel, brings this action on behalf of itself and all other persons and entities that were sent unsolicited advertisements by facsimile transmission from Defendant, Expanse Financial Technologies, Inc., formerly known as Prepaid Ventures, Ltd., and one or more unknown John Does, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the FCC's regulations prescribed under 47 U.S.C. § 227 (b). Plaintiff makes the allegations based on personal knowledge with respect to facts known to Plaintiff and

otherwise on information and belief after a reasonable investigation by counsel.

## PRELIMINARY STATEMENT

1. Plaintiff brings this action on behalf of itself and a class of similarly situated persons and entities, seeking statutory damages and other relief under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), arising from Defendant's transmission of unsolicited advertisements by facsimile.

2. The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227 (a)(5).

3. On July 16, 2021, Plaintiff received an unsolicited advertisement from Defendant on its fax machine. A true and correct copy is attached as Exhibit A.

4. Exhibit A advertises the commercial availability and quality of Defendant's property, goods, or services. See 47 U.S.C. § 227 (a)(5).

5. The TCPA prohibits the transmission of fax advertisements without the recipient's "prior express invitation or permission." Alternatively, in the context of an "established business relationship," a sender may fax an unsolicited advertisement only if it includes a clear and conspicuous opt-out notice meeting statutory and regulatory requirements. *See* 47 U.S.C. § 227 (b)(1)(C); 47 C.F.R. § 64.1200(a)(4)(iii).

6. Defendant did not have Plaintiff's prior express invitation or permission to send the fax attached as Exhibit A.

7. Plaintiff had no established business relationship with Defendant.

8. Exhibit A contains no opt-out notice, as required by the TCPA. Accordingly, Defendant cannot invoke any exception based on an established business relationship. See 47 U.S.C. § 227 (b)(1)(C)(i), (iii).

9. Each unsolicited fax advertisement causes concrete harm. Recipients are a captive audience; fax machines are kept active to receive authorized communications. Unsolicited faxes exploit recipients' equipment and resources—whether by consuming paper, toner, electricity, or by using digital storage, memory, and bandwidth. Even when not printed, such faxes require time and attention to review, delete,

or manage. They intrude upon the recipient's seclusion, disrupt workflow, and cause both economic and informational harm, including lost productivity and the unconsented use of private communication infrastructure.

10. The TCPA provides a private right of action for each violation, with statutory damages of $500 per unsolicited fax. If the violation is found to be willful or knowing, the Court may award up to $1,500 per fax. The Court may also enjoin further violations. See 47 U.S.C. § 227 (b)(3).

11. Plaintiff brings this action on behalf of itself and all others similarly situated to recover statutory damages and other relief for each unsolicited advertisement sent by or on behalf of Defendant during the four years preceding the filing of this action and continuing through the date the Court authorizes notice to the class.

## PARTIES, JURISDICTION, AND VENUE

12. Plaintiff, University Food Center, Inc., is a Michigan corporation that operates a grocery store in Detroit, Michigan.

13. Defendant Expanse Financial Technologies, Inc. is a Delaware corporation with its principal place of business located at 3333 New Hyde Park Rd, 4th floor, New Hyde Park, NY 11042.

14. On information and belief, Defendant was known as "Prepaid Ventures, Ltd." until October 20, 2022, when the company changed its name to Expanse Financial Technologies, Inc.

15. John Does 1-5 are other persons or entities whose identities are not yet known to Plaintiff but who are liable as "senders" of the facsimiles at issue.

16. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

17. Personal jurisdiction exists over Defendant in Michigan because it transacts business in and makes or performs contracts substantially connected with the State, and because it committed tortious acts by causing the transmission of unlawful fax advertisements to Michigan residents, including Plaintiff.

18. Venue is proper in the Eastern District of Michigan, Southern Division, because Defendant committed statutory torts within this District and a significant portion of the events took place here.

## FACTS

19. Defendant provides a variety of commercial financial payment products and services. Among other things, Defendant sells

prepaid card services like "NexsCard."

20. NexsCard is a prepaid Visa debit card designed to provide banking services and the features of a bank to customers, without a bank.

21. In exchange for fees on transactions, Defendant makes NexsCard prepaid cards commercially available so end users can load money and use the card like a debit card. https://nexscard.com/NexsCard/long-form (accessed 7/8/25).

22. The header of Exhibit A says the fax is from "NexsCard Agent Services."

23. Exhibit A prominently displays a N with an orbiting circle around it next to the word "NEXSCARD" at the top of the page.

NEXSCARD™
prepaid you can bank on™

24. Defendant owns the Service Mark described as, "The mark consists of the stylized letter "N" with designs of two arrows orbiting it" (US Serial Number 85956102) – pictured below:

25. Defendant owns the registered Service Mark "PREPAID VENTURES, LTD." (US Serial Number 88838932).

26. Defendant owns the registered Service Mark "PREPAID VENTURES" (US Serial Number 88838970).

27. According to NexsCard's website, NexsCard has an "Extensive Retailer Network," so "NexsCard is around the corner with thousands of locations nationwide." https://nexscard.com/NexsCard/page-services (accessed 7/8/25).

28. The NexsCard website states that NexsCard is "Powered by Expanse Financial Technologies, Inc." https://nexscard.com/NexsCard/ (accessed 7/8/25).

29. The NexsCard website states, "NexsCard and Expanse Financial Technologies, Inc. is a financial technology company." https://nexscard.com/NexsCard/ (accessed 7/8/25).

30. The NexsCard website states that "FOR [NexsCard] CUSTOMER SERVICE CALL EXPANSE FINANCIAL TECHNOLOGIES, INC - NEXSCARD AT 1-800-221-6504." https://nexscard.com/NexsCard/ (accessed 7/8/25).

31. According to an article dated October 20, 2022, and published on Defendant's public website, "Prepaid Ventures, a leader in providing full-service cloud-based payment solutions announced today that it has changed its name to Expanse Financial Technologies, Inc., LTD. The company will operate under the name ExpanseFT." https://www.expanseft.com/news.php?p=9 (accessed 7/8/25).

32. Plaintiff operates a grocery store in Detroit, Michigan.

33. Plaintiff has received at least one unsolicited advertisement from Defendant by fax.

34. On July 16, 2021, Plaintiff received an unsolicited advertisement about NexsCard on its fax machine. A true and correct copy of the fax is attached as Exhibit A.

35. Exhibit A was sent by or on behalf of Defendant.

36. Exhibit A advertises the commercial availability or quality of property, goods, or services.

37. Exhibit A advertises NexsCard's Tap to Pay service by saying things like, "NexsCard now has Mobile Tap to Pay," "AS EASY AS 1, 2, 3," and "For more information contact [NexsCard] at 516-653-2440."

38. According to Defendant's website, 516-653-2440 is its phone number. https://www.expanseft.com/ (accessed 7/8/25).

39. Defendant did not have Plaintiff's prior express invitation or permission to send advertising material to Plaintiff's facsimile number.

40. Plaintiff has no established business relationship with Defendant.

41. Plaintiff does not sell or offer NexsCard.

42. Exhibit A does not contain any opt-out notice.

43. Because Exhibit A contains no opt-out notice, any established business relationship between Defendant and any class member is irrelevant to this action about unsolicited advertisements.

44. Exhibit A is a form or template, it is not specifically addressed to any recipient, and it has no information about the intended recipient other than the fax number appearing in the header.

45. Upon information and belief formed after reasonable investigation, Defendant sent faxes like Exhibit A to more than 40 persons or entities.

46. Upon information and belief formed after reasonable investigation, Exhibit A was sent to a target list in bulk. Broadcast fax is a low-cost way to reach a large audience—far cheaper than direct mail, television, radio, telephone calls, and in-person visits (not accounting for the statutory damages available under the TCPA)—but illegal when the sender lacks prior express invitation or permission to fax advertising material.

47. Plaintiff and the other class members have no obligation to take affirmative steps to attempt to avoid Defendant's unlawful advertising. Their fax machines are ready to send or receive their urgent or private business communications, not to receive Defendant's advertising material.

48. The TCPA authorizes a person or entity to maintain an action "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. 227 (b)(3)(B).

49. For itself and each class member, Plaintiff seeks statutory, liquidated damages of $500 for each unsolicited advertisement sent by or on behalf of Defendant.

50. Plaintiff does not seek to recover for actual monetary loss from the TCPA violations.

## CLASS REPRESENTATION ALLEGATIONS

51. Plaintiff brings this lawsuit as a class action on behalf of itself and all other similarly-situated persons and entities who were sent one or more unsolicited fax advertisements from Defendant on or after July 15, 2021.

52. The proposed class is defined as follows:

> All persons and entities sent one or more facsimile transmissions regarding NexsCard on or after July 15, 2021, and containing no opt-out notice.

53. Excluded from the class are Defendant and its employees, officers, and directors, its legal representatives, heirs, successors, and

assigns, and any judge assigned to this action, and his or her family.

54. Plaintiff intends to discover the full scope of Defendant's fax advertising. *See* Exhibit B, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

55. Plaintiff anticipates modifying the proposed class definition—including proposing subclasses if appropriate—after discovery.

56. This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Rule 23(a). Additionally, prosecution of Plaintiff's claims separately from the class's claims would create a risk of inconsistent or varying adjudications under Rule 23(b)(1)(A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23(b)(3).

**<u>Numerosity/Impracticality of Joinder</u>**

57. On information and belief, the class includes more than 40 persons and, thus, is so numerous that joinder of all members is impracticable.

58. Exhibit A is a standardized form or template.

59. The precise number of class members and their identities are unknown to Plaintiff but will be obtained from Defendant's records or the records of third parties.

**Commonality and Predominance**

60. There is a well-defined community of interest among the class members.

61. Common questions of law and fact predominate over any question affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

a. Whether Defendant sent facsimiles containing material advertising the commercial availability or quality of its property, goods, or services;

b. Whether advertising material was sent by facsimile transmissions by or on behalf of Defendant and

without the prior express invitation or permission of the targeted recipients;

c. Whether facsimiles were sent by or on behalf of Defendant in one or more broadcasts, and if so the manner and method used to obtain or compile the target list(s) for those broadcasts;

d. Whether Defendant's facsimiles contained an opt-out notice;

e. Whether Defendant is directly or vicariously liable for violating the TCPA;

f. Whether Plaintiff and the other class members should be awarded statutory damages;

g. Whether Defendant violated the TCPA or the FCC's junk fax regulations willfully or knowingly and, if so, whether the Court should treble the statutory damage awards; and

h. Whether the Court should enjoin Defendant from sending unsolicited advertisements by facsimile in the future.

**Typicality of Claims**

62. Plaintiff's claims are typical of the claims of the other class members because all were injured by the same wrongful practices. Plaintiff and the members of the class received Defendant's unsolicited advertisements by facsimile. If Plaintiff prevails on its claims, then the putative class members will prevail as well.

**Adequacy of Representation**

63. Plaintiff is an adequate representative of the class. Plaintiff's interests do not conflict with the interests of the class. Plaintiff has retained counsel competent and experienced in complex class action litigation, and TCPA litigation in particular, and Plaintiff intends to vigorously prosecute this action. Plaintiff and its counsel will fairly and adequately protect the interest of members of the class.

**A Class Action is an Appropriate Method to Adjudicate this Controversy Fairly and Efficiently**

64. A class action is an appropriate method for the fair and efficient adjudication of this controversy. The likelihood of individual class members prosecuting separate claims is remote. Individual litigation would be economically unfeasible and procedurally impracticable. Individual litigation also would burden the court system.

Relief concerning the rights of the entire class, including Plaintiff, would be proper. There is no other litigation pending regarding fax advertisements sent by Defendant. Plaintiff envisions no difficulty in the management of this case as a class action.

## COUNT I

## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

65. Plaintiff incorporates the preceding paragraphs as though fully alleged herein.

66. Plaintiff brings Count I on behalf of itself and a class of similarly-situated persons and entities.

67. The TCPA provides in pertinent part as follows:

> (b) Restrictions on use of automated telephone equipment
>
> (1) Prohibitions
>
> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States –
>
> ***
>
> (C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless–
>
> (i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;

(ii) the sender obtained the number of the telephone facsimile machine through–

(I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or

(II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution, except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before July 9, 2005; and

(iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D),

except that the exception under clauses (i) and (ii) shall not apply with respect to an unsolicited advertisement sent to a telephone facsimile machine by a sender to whom a request has been made not to send future unsolicited advertisements to such telephone facsimile machine that complies with the requirements under paragraph (2)(E); or ….

U.S.C. § 227 (b)(1)(C).

68. "[T]he [Federal Communications] Commission shall prescribe regulations to implement the requirements of this subsection…." 47 U.S.C. § 227 (b)(2)(D)(i).

69. The FCC's regulations pertaining to the opt-out notices required on unsolicited advertisements are set forth at 47 C.F.R. § 64.1200(a)(4).

70. The TCPA provides a "private right of action" as follows:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—
>
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> (C) both such actions.
>
> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227 (b)(3).

71. The opt-out notice on an unsolicited advertisement sent by fax must include "a domestic contact telephone and facsimile number for the recipient to transmit such a request to the sender" as well as a "cost-free mechanism for a recipient to transmit a request pursuant to such notice ..." 47 U.S.C. § 227 (b)(2)(D)(iv).

72. "A notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if ... (v) the telephone and facsimile machine numbers and the cost-free mechanism ... permit an individual or business to make such a request at any time on any day of the week." 47 U.S.C. § 227 (b)(2)(D)(v).

73. Defendant violated subsection (b) of 47 U.S.C. § 227 or the FCC's regulations prescribed under that subsection by sending unsolicited advertisements by fax.

74. The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227 (a)(4).

75. The fax attached as Exhibit A advertises the commercial availability or quality of property, goods, or services.

76. Defendant sent advertisements like Exhibit A to Plaintiff and others by facsimile without obtaining their prior express invitation or permission to send advertising material to their fax machines.

77. Plaintiff has no "established business relationship" with Defendant. 47 U.S.C. § 227 (a)(2).

78. Exhibit A does not have an opt-out notice.

79. Plaintiff intends to discover and include within this action all unsolicited advertisements sent by fax by or on behalf of Defendant.

80. Defendant violated the TCPA by sending advertisements to Plaintiff and others by facsimile transmission without their prior express invitation or permission and by failing to include opt-out notices on those fax advertisements (to the extent Defendant argues an established business relationship legally justified the faxes).

81. Facsimile advertising imposes burdens on unwilling recipients that are distinct from those imposed by other types of advertising. The content of the required opt-out notice is designed to ensure that the recipients know how to prevent and avoid future fax transmissions of advertising material and to provide the various cost-free means Congress required. If senders do not clearly and

conspicuously provide recipients with an opportunity to opt out, then those recipients are unreasonably forced to bear the burdens associated with this form of advertising.

82. The TCPA is a strict liability statute, so Defendant is liable to Plaintiff and the other class members regardless of whether its actions were negligent or well-intentioned.

83. Defendant is liable because it either sent the faxes, caused the faxes to be sent, or participated in the sending process. Further, the faxes were sent on Defendant's behalf, and Plaintiff alleges on information and belief formed after a reasonable investigation that Defendant gave actual authority or ratified the unlawful conduct.

84. Defendant knew or should have known that Plaintiff and the other class members had not given express invitation or permission for Defendant or anybody else to send advertisements by facsimile transmission and that Defendant's faxes did not display an opt-out notice as required by the TCPA and did not make available the means Congress intended to make such an opt-out request.

85. Defendant's actions caused harm. Defendant's unsolicited fax advertisement invaded each recipient's privacy and right to

seclusion. Defendant's unsolicited faxes wasted the recipients' valuable time. Defendant's unsolicited faxes caused Plaintiff and others to lose paper and toner consumed in printing Defendant's faxes.

86. Defendant's conduct in sending such unsolicited fax advertisements violates the TCPA, 47 U.S.C. § 227.

87. Plaintiff does not seek to recover for actual monetary loss. Rather, for itself and every other member of the class, Plaintiff seeks an award of $500 in statutory damages for each of Defendant's violations of the TCPA.

88. The Court, in its discretion, can treble the statutory damages if the violation was knowing or willful, and Plaintiff requests trebling under 47 U.S.C. § 227 (b)(3), if the Court finds Defendant's violations of the TCPA were knowing or willful.

89. The Court also should enjoin Defendant from sending future unsolicited advertisements by fax without the prior express invitation or permission of the intended recipient or a compliant opt-out notice.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly-situated, demands judgment in favor of itself and the entire class and against Defendant as follows:

a. That the Court adjudge, find, and decree that this case may be maintained as a class action, certify a class, appoint Plaintiff as the class representative, and appoint Plaintiff's attorneys as counsel for the class;

b. That the conduct alleged herein be declared to be in violation of the TCPA;

c. That the Court award $500.00 in statutory damages for each of Defendant's violations of the TCPA;

d. That the Court treble the statutory damages if it concludes that Defendant 's violations were willful or knowing;

e. That the Court enter an injunction prohibiting Defendant from sending advertisements by fax without first demonstrating that it has obtained prior express invitation or permission to send advertising material by fax transmission;

f. That the Court enter judgment against Defendant and in favor of Plaintiff and the class;

g. That the Court award to Plaintiff and the class their recoverable costs of suit; and

h. That the Court award all other relief allowed by law or equity that the Court deems just and proper.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all triable issues.

Respectfully submitted,

UNIVERSITY FOOD CENTER, INC.,
individually and on behalf of all similarly-situated persons and entities,

By: */s/ Phillip A. Bock* _____
One of their attorneys

Phillip A. Bock
David M. Oppenheim
Barry J. Blonien
Jeffrey A. Berman
BOCK HATCH & OPPENHEIM, LLC
203 N La Salle St, Ste 2100
Chicago, IL 60601
Telephone: 312-658-5500
Facsimile: 312-658-5555
Email: service@classlawyers.com